**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

*In re: Hi-Crush Partners L.P. Securities Litigation*

No. 12-Civ-8557 (CM)

**ECF Case**

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS**
**SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

**Pages**

I.     INTRODUCTION ........................................................................................................ 1

II.    PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS ................. 2

    A.     Procedural Background ..................................................................................... 2

    B.     Substantive Allegations ................................................................................... 5

III.   REASONS FOR THE SETTLEMENT .................................................................... 6

IV.    THE TERMS OF THE SETTLEMENT .................................................................. 7

V.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND
    FINAL APPROVAL SHOULD BE GRANTED ..................................................... 7

    A.     The Applicable Standard ................................................................................. 7

    B.     The Settlement Is Procedurally Fair as it Was Negotiated at Arm's-
        Length and Is Supported by Lead Plaintiffs and Experienced Counsel ................. 9

    C.     The Settlement Terms are Fair, Reasonable, and Adequate and
        Satisfy the Second Circuit's Grinnell Factors ........................................... 11

        1.     Continued Litigation Would Be Complex, Expensive, and
            Protracted .................................................................................... 11

        2.     Reaction of the Class to the Settlement ....................................... 13

        3.     Lead Plaintiffs Had Sufficient Information to Make Informed
            Decisions as To Settlement .......................................................... 14

        4.     Lead Plaintiffs Faced Significant Risks in Establishing Liability
            and Damages ................................................................................ 15

        5.     Risks of Maintaining Class Action Status Through Trial .............. 17

        6.     Ability to Withstand Greater Judgment ....................................... 18

        7.     The Settlement Amount Is in the Range of Reasonableness in
            Light of the Best Possible Recovery and All the Attendant Risks
            of Litigation ................................................................................ 18

    D.     The Plan of Allocation Should Be Approved as It Is Fair,
        Reasonable, and Adequate .......................................................................... 19

    E.     Notice to the Class Satisfies Due Process Requirements..................................... 21

VI.    CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
  722 F.2d 988 (2d Cir. 1983)....................................................................... 8

*In re Advanced Battery Techs., Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................... 10, 18, 19

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 Civ. 1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004)............................................. 16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................... 11, 15

*In re Bear Stearns Cos., Inc. Sec., Der., and ERISA Litig.*,
  909 F.Supp.2d 259 (S.D.N.Y. 2012) ........................................................ 14

*Cinelli v. MCS Claim Servs., Inc.*,
  236 F.R.D. 118 (E.D.N.Y. 2006) ............................................................ 15

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)........................................................ 15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................ 9, 10, 12, 15, 16, 18, 19

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................... 8, 13, 15

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992)........................................................ 8, 18

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................ 10

*In re Datatec Sys., Inc. Sec. Litig.*,
  Master File No. 04 Civ. 525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .............................. 20

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)........................................................................ 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02 Civ. 400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................ 8, 11, 16, 17, 20

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ................................................................................. 20

*Hicks v. Stanley*,
    No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................... 11, 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12 Civ. 8557 (CM), 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) .......................... 5, 12, 15

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................. 14

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................ 10

*In re Ivan F. Boesky Sec. Litig.*,
    948 F.2d 1358 (2d Cir. 1991) ...................................................................................... 8

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ........................................................................................ 8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 14, 20

*In re Milken and Assoc. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................................. 17

*In re Omnicom Group, Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ....................................................................................... 17

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997) .............................. 10, 17

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ........................................ 13

*Shapiro v. JPMorgan Chase & Co.*,
    Nos. 11 Civ. 8831 (CM)(MHD), 11 Civ. 7961 (CM),
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................................. 8

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...................................... 12, 18

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................... 12

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................... 8

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01 Civ. 11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .......................... 15

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................. 8, 19

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ......................................................................... 8

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) ....................................................................... 9

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............. 10, 11, 13, 16, 19, 20

*In re Visa Check/MasterMoney AntitGCG Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................................... 8, 19, 18

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .................................................................................... 9

**Rules and Statutes**

Fed. R. Civ. P. 23 ........................................................................................................ 7

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................................... 2

## I.    INTRODUCTION

Court-appointed Lead Plaintiffs and Counsel in the above-captioned class action (the "Action") respectfully submit that the proposed $3.8 million Settlement satisfies all of the relevant standards for final approval under Rule 23 of the Federal Rules of Civil Procedure.[1]   The Settlement recovers approximately 36% of estimated potential class-wide recoverable damages, which compares very favorably to the percentage of damages recovered in settlements of other securities class actions.[2]   Pursuant to this Court's Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order") the Court will hear Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation on December 19, 2014 at 9:30 a.m. (ECF No. 104).[3]

The Settlement is eminently fair considering the substantial recovery to the Settlement Class and the risks and costs attendant to further, protracted litigation.   The Settlement resulted from intensive arm's-length negotiations during a mediation session before Robert A. Meyer of Loeb & Loeb LLP ("Meyer" or the "Mediator"), which was also attended by Defendants' insurer. The Settlement reflects a reasoned compromise based on Lead Plaintiffs' and Lead Counsel's knowledge of the strengths and weaknesses of the case gained through an extensive pre-complaint

---

[1] "Lead Plaintiffs" refers to court-appointed Lead Plaintiffs HITE Hedge LP and HITE MLP LP (collectively, the "HITE Funds").   "Lead Counsel" or "Interim Lead Counsel" refers to court-appointed Lead Counsel Kirby McInerney LLP.  *See* ECF No. 54.  All capitalized terms not otherwise defined shall carry the meaning set forth in the Stipulation and Agreement of Settlement, dated September 12, 2014 ("the Stipulation"), as Exhibit 102-1, to the accompanying Declaration of Ira M. Press ("Press Decl.").

[2] According to a 2014 report by NERA Economic Consulting entitled "Recent Trends in Securities Class Action Litigation:  2013 Full-Year Review" ("NERA Report"), "the median settlement for cases with investor losses of less than $20 million has been 17.1% of the investor losses."  *See* Press Decl. Ex. 4 at 32.

[3] Lead Counsel is concurrently filing a motion for an award of attorneys' fees and reimbursement of litigation expenses.

investigation, motion practice, consultations with damages experts, and discovery. For the reasons set forth below, it is respectfully submitted that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and the Court should approve the Settlement.

## II.    PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### A.    Procedural Background

Between November 21, 2012 and December 18, 2012, plaintiffs Shirley Horn, Douglas Goodhart, Leona Sesholtz, Alexander W. Thiele, and Peter A. Luebke filed four separate putative class action lawsuits against Hi-Crush, its general partner, certain of its officers and directors, and the underwriters of Hi-Crush's Initial Public Offering ("IPO"): *Horn v. Hi-Crush Partners, L.P., et al.*, 12-CV-8557 (S.D.N.Y.) (the "Horn Action"); *Goodhart v. Hi-Crush Partners, L.P., et al.*, 12-CV-8574 (S.D.N.Y.) (the "Goodhart Action"); *Sesholtz, at al. v. Hi-Crush Partners, L.P., et al.*, 12-CV-8610 (S.D.N.Y.) (the "Sesholtz Action"); and *Luebke v. Hi-Crush Partners, L.P., et al.*, 12-CV-9212 (S.D.N.Y.) (the "Luebke Action"). These lawsuits alleged violations of Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act") in connection with Hi-Crush's IPO, against Hi-Crush Partners LP, the company's investment bankers (Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC, RBC Capital Markets, LLC, Raymond James & Associates, Inc., Robert W. Baird & Co. Incorporated, UBS Securities LLC), and Individual Defendants (Jeffries V. Alston, III ("Alston"), Robert L. Cabes, Jr. ("Cabes"), Laura C. Fulton ("Fulton"), John R. Huff ("Huff"), Robert E. Rasmus ("Rasmus"), Trevor M. Turbidy ("Turbidy"), Steven A. Webster ("Webster"), and James M. Whipkey ("Whipkey")).

Pursuant to the PSLRA (15 U.S.C. § 78u-4(a)(3)(B)), several members of the putative class moved for appointment as lead plaintiff on or before January 22, 2013.

Plaintiffs in the *Goodhart* Action and *Sesholtz* Action voluntarily dismissed their lawsuits on December 10, 2012 and February 7, 2013, respectively.

By an order dated February 11, 2013 (the "Order") (ECF No. 54), the Court consolidated the *Horn* Action and *Luebke* Action under the caption *In re Hi-Crush Partners, L.P. Securities Litigation*, 12 Civ. 8557 (the "Consolidated Action").  In the Order, the Court appointed the HITE Funds as the Lead Plaintiffs, and Kirby McInerney LLP as lead counsel for the putative class in the Consolidated Action.  The Court also directed Lead Counsel to file any consolidated or amended complaint on or before February 15, 2013.

On February 15, 2013, Lead Plaintiffs filed a consolidated amended complaint (the "Consolidated Complaint"), adding Hi-Crush GP as a defendant.  The Consolidated Complaint alleged violations of Sections 11, 12 and 15 of the Securities Act, and added claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated under Section 10(b), which had not been asserted in any of the previously filed complaints.

On March 22, 2013, all of the named defendants moved to dismiss the Consolidated Complaint.  On April 12, 2013, Lead Plaintiffs filed their Opposition to the defendants' motions to dismiss the Consolidated Complaint.  Defendants filed replies in support of their motions to dismiss on April 19, 2013.

On December 2, 2013, the Court issued a Decision and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss ("Decision and Order").  Specifically, the Court dismissed the claims asserted under Sections 11, 12 and 15 of the Securities Act, but denied dismissal as to the claims asserted under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, relating to investments in Hi-Crush common units during the period from September 25, 2012 through November 12, 2012.  As a result of the Decision and Order, certain defendants, which

include the named underwriter defendants (who had only been named in the Securities Act claims) and certain of the individual defendants, were dismissed from the Consolidated Action.

On January 13, 2014, the remaining Defendants (Hi-Crush, Hi-Crush GP, and Alston, Fulton Rasmus, and Whipkey) filed their answer to the Amended Complaint denying the allegations therein.

From February to June 2014, the parties engaged in discovery that included the production and exchange of documents, and the taking and defense of deposition testimony.

On April 15, 2014, Lead Plaintiffs filed a Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Class Certification Motion"). On May 15, 2014, Defendants filed their Opposition to Plaintiffs' Class Certification Motion and Plaintiffs filed their reply on June 17, 2014.

During the pendency of Lead Plaintiffs' motion for class certification, the parties agreed to explore a negotiated resolution through mediation. On June 25, 2014, the Settling Parties participated in mediated settlement negotiations before the Mediator. After an intensive day long mediation session, which was attended by Defendants' insurers, the Mediator made a proposal to settle the Action for $3.8 million in cash, subject to the execution of a formal stipulation and the Court's approval. Shortly thereafter, the parties accepted the Mediator's proposal. The Stipulation of Settlement ("Stipulation") together with exhibits and certain other documents referred to herein, has been duly executed by the undersigned signatories on behalf of their respective clients, and reflects the final and binding agreement between the parties. *See* Press Decl. Ex. 1.

On September 12, 2014, Lead Plaintiffs moved for preliminary approval of the Settlement, certification of a settlement class and approval of the Settlement. ECF Nos. 100. On September 16, 2014, the Court granted Lead Plaintiffs' motion. ECF No. 104.

### B.   Substantive Allegations

The factual allegations of the Complaint have been summarized and discussed at length in the Court's decision on Defendants' motion to dismiss. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557 (CM), 2013 WL 6233561, at *1-5 (S.D.N.Y. Dec. 2, 2013). In support of the claims that survived Defendant's motions to dismiss, Lead Plaintiffs pled that prior to November 13, 2012, Defendants wrongfully concealed that Baker Hughes Inc. ("Baker Hughes") repudiated its Supply Agreement with Hi-Crush in September 2012. Moreover, in public statements following that repudiation, Defendants continued to reference Hi-Crush's relationship with Baker Hughes, and they did not even hint at the possibility that this customer relationship, which comprised a significant proportion of Hi-Crush's revenues, was endangered.

On November 13, 2012, Hi-Crush issued a press release and filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC"). These filings for the first time publicly disclosed that, on September 19, 2012, Baker Hughes had purported to repudiate its Supply Agreement with Hi-Crush. The release additionally disclosed that, in response to Baker Hughes' purported repudiation, Hi-Crush had formally terminated the Supply Agreement and had filed a lawsuit against Baker Hughes on November 12, 2012.

On the first day of trading following this disclosure, Hi-Crush's common units lost approximately 26% of their value on extremely high trading volume of more than 3.3 million units. The price fell from $20.35 per unit on November 12, 2012 to $15.00 per unit on November 13, 2012.

## III.   REASONS FOR THE SETTLEMENT

The principal reason for the Settlement is the significant benefit that it provides to the Settlement Class now.  This benefit must be weighed against the risk that the Settlement Class would receive no recovery had Plaintiffs elected to continue litigating and been defeated at the class certification or summary judgment phases, trial, or appeal.

Lead Plaintiffs' decision to settle this matter was fully informed and the product of Lead Counsel's rigorous prosecution of this matter through the date of the parties' agreement. Specifically, in assessing whether the Settlement is in the best interest of the Settlement Class, Lead Plaintiffs and Lead Counsel evaluated:  (i) the merits of the parties' claims and defenses in light of discovery; and (ii) the likelihood of defeating any *Daubert* or summary judgment motions, and prevailing at trial.

Although Lead Plaintiffs believe that the Defendants knowingly or recklessly misrepresented the state of the Baker Hughes customer relationship, Defendants have raised a host of factual and legal challenges, increasing the uncertainty of a favorable outcome absent settlement.  Securities fraud litigations like this action are notoriously complex and difficult to prove:  rarely is there concrete direct evidence of fraudulent intent.  Moreover, although several of Lead Plaintiffs' claims survived dismissal, Lead Plaintiffs faced the risk that the Court would dismiss the remaining claims on summary judgment for failure to establish scienter, or that a jury would determine, based on the evidence proffered at trial, that Defendants had not acted with the intent to defraud when they chose not to make public disclosure of Baker Hughes' repudiation. Lead Plaintiffs also faced the possibility that the Court would not grant (or would severely curtail) class certification or reject Lead Plaintiffs' damage expert under *Daubert*.  By settling the action now, Lead Plaintiffs and the Settlement Class can share in what would amount to a recovery of

over 36% of the potential class-wide recovery had plaintiffs prevailed at trial on all of their claims, and had all class members submitted claims thereto.  *See infra* at Section V.C.7.

Similarly, although Defendants deny each and all of Lead Plaintiffs' claims and contentions, they nevertheless have concluded that it is desirable to fully and finally resolve this litigation in the manner and on the terms set forth in the Stipulation.  For Defendants, resolution of the Action limits further expense and inconvenience and eliminates the uncertainty and risks inherent in any litigation.

Accordingly, Lead Plaintiffs and Lead Counsel respectfully submit that the Court should grant final approval of the proposed Settlement because it represents a significant all-cash compensation for the Settlement Class and will eliminate the significant risk that continued litigation may result in a smaller recovery or possibly no recovery at all.  Defendants do not oppose this motion for final approval of the proposed class action Settlement.

## IV.    THE TERMS OF THE SETTLEMENT

The Settlement resolves all claims of Lead Plaintiffs and the Settlement Class against all Released Parties.  *See* Press Decl., Ex. 1.  The Defendants have agreed to cause $3.8 million in cash to be paid into a Settlement Fund on behalf of Lead Plaintiffs and the Settlement Class.  The Settlement Fund will be deposited into an escrow account within thirty days after the entry of the Preliminary Approval Order in accordance with the payment instructions to be provided by Lead Counsel and will then earn interest until distributed to the Settlement Class.

## V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND FINAL APPROVAL SHOULD BE GRANTED

### A.    The Applicable Standard

The settlement of claims brought by a certified class is subject to court approval after reasonable notice and a hearing.  *See* Fed. R. Civ P. 23(e)(1)-(2).  A court will approve a settlement

if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).

This determination falls within a court's sound discretion. *See Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000); *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); *In re Visa Check/MasterMoney AntitGCG Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003). In exercising such discretion, a court should be mindful of the "strong judicial policy in favor of settlements." *Wal-Mart*, 396 F.3d at 116 (internal quotations omitted); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir. 1983).

"Courts determine the fairness of a settlement by looking both at the terms of the settlement and the negotiation process leading up to it." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); s*ee Wal-Mart*, 396 F.3d at 116 (citations omitted). With respect to process, a class action settlement enjoys a strong "presumption of fairness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery. *See Wal-Mart*, 396 F.3d at 116; *see also City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM), 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014); *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8831 (CM)(MHD), 11 Civ. 7961 (CM), 2014 WL 1224666, at *7 (S.D.N.Y. Mar. 24, 2014) (McMahon, J.); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993). This is particularly true in complex class actions, where "the courts have long recognized that such litigation 'is notably difficult and notoriously uncertain,'

and that compromise is particularly appropriate." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (internal citations omitted).

With respect to the substantive terms of a settlement, courts in this Circuit analyze the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463) (citations omitted)).

In applying the *Grinnell* factors, a court should not substitute its judgment for those of the parties who negotiated the settlement, or conduct a "mini-trial" on the action's merit. *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

Here, the proposed Settlement is fair, reasonable and adequate when measured under the *Grinnell* factors. Counsel for the parties have thoroughly weighed the strengths and weaknesses of the claims and defenses thereto and, after a formal mediation session and extensive negotiations facilitated by an independent and experienced mediator, have reached an informed compromise.

## B.     The Settlement Is Procedurally Fair as it Was Negotiated at Arm's-Length and Is Supported by Lead Plaintiffs and Experienced Counsel

The Settlement was negotiated at arm's-length by counsel who are experienced in complex securities litigation and who were acting in an informed manner. During the mediation process, the parties submitted confidential mediation statements and participated in a full day mediation session, which was attended by Defendants' insurers. After the conclusion of the mediation, the

parties accepted the Mediator's proposal to settle and release all claims for $3.8 million in cash. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement . . . ensure[d] that the proceedings were free of collusion and undue pressure"); *see also In re Advanced Battery Techs., Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("[A] strong initial presumption of fairness attaches to the proposed settlement, if, as here, the settlement is reached by experienced counsel after arm's-length negotiations."); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, *4 (S.D.N.Y. Sept. 29, 2003) ("[T]hat the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Moreover, the recommendation of Lead Plaintiffs, which are sophisticated institutional investors, also supports the fairness of the Settlement. A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (internal citation omitted). The HITE Funds are managed by a sophisticated institutional investment management company that manages hedge fund portfolios. Lead Plaintiff took an active role in all aspects of this Action, as envisioned by the PSLRA, including during discovery and participation in settlement negotiations. *See, e.g.* Press Decl. at ¶¶27-28, 32. Lead Plaintiff approves of the Settlement without reservation. *Id.* at ¶55.

Lead Counsel, who has extensive experience prosecuting complex securities class actions and is intimately familiar with the facts of this case, believes that the Settlement is not just fair, reasonable and adequate, but is an excellent result for Lead Plaintiff and the Class. *See* Press Decl. ¶¶12, 49, 72. This opinion is entitled to "great weight." *In re PaineWebber Ltd. P'ships Litig.*, 171

F.R.D. 104, 125 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997) (citation omitted); *see also Vecco*, 2007 WL 4115809, at \*12.

All of these considerations confirm the reasonableness of the Settlement and that the Settlement is entitled to the presumption of procedural fairness.

### C.     The Settlement Terms are Fair, Reasonable, and Adequate and Satisfy the Second Circuit's *Grinnell* Factors

In determining whether the substantive terms of a settlement are fair, reasonable, and adequate, courts in this Circuit look to the nine *Grinnell* factors.  However, all nine factors need not be satisfied.  Instead, the court should look at the totality of these factors in light of the specific circumstances involved.  *Global Crossing*, 225 F.R.D. at 456.  As demonstrated below, the Settlement satisfies the Grinnell factors.  Accordingly, the Settlement clearly warrants this Court's final approval.

### 1.     Continued Litigation Would Be Complex, Expensive, and Protracted

Courts have consistently recognized that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a securities class action.  *See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,* No. MDL 1500, 02 Civ. 5575, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006); *Hicks v. Stanley,* No. 01 Civ. 10071, 2005 WL 2757792, at \*5-6 (S.D.N.Y. Oct. 24, 2005).

The parties resolved this action after the Lead Plaintiffs:  (i) conducted an extensive pre-complaint investigation; (ii) drafted and filed an Amended Consolidated Complaint; (iii) successfully opposed Defendants' motions to dismiss briefing; (iv) engaged in class and merits discovery; and (v) retained the Mediator to assist them in exploring a potential negotiated resolution of the claims against the Defendants.  During the mediation process, the parties submitted confidential mediation statements and participated in a full day face-to-face mediation

session, which, with the assistance of the mediator, resulted in an agreement to settle and release all claims asserted against all Defendants for $3.8 million in cash.  Reaching a settlement at this juncture avoided the uncertainties of protracted litigation.

Absent the Settlement, Lead Plaintiffs would still need to pursue contentious and expensive discovery proceedings, including expert discovery, additional motion practice, a complex and costly trial, and likely appeals.  Throughout this process Lead Plaintiffs would face numerous hurdles such as compelling challenges to scienter.  Defendants consistently suggested that they acted in good faith and did not intend to defraud investors.  In particular, Defendants observed that they relied upon the advice of experienced counsel that Baker Hughes' purported repudiation was invalid and that a disclosure duty did not arise until Hi-Crush filed its own lawsuit against Baker Hughes November 12, 2012.  Indeed, as this Court observed in its motion to dismiss opinion, notwithstanding Baker Hughes' September 19, 2012 repudiation of the Supply Agreement, "Hi-Crush did not actually breach its agreement with Baker Hughes and . . . Baker Hughes had no valid basis for terminating the agreement."  *See Hi-Crush*, 2013 WL 6233561, at *16.  In addition, Defendants have challenged Lead Plaintiffs' loss causation and damages theories.

By contrast, the Settlement offers the opportunity to provide definite recompense to the Class now – making the instant Settlement a particularly valuable "bird in the hand."  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current

recovery"); *Hicks*, 2005 WL 2757792, at *6 ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

      **2.**      **Reaction of the Class to the Settlement**

      The reaction of the Settlement Class to the Settlement is a significant factor in assessing its fairness and adequacy.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 400 (CM) (PED), 2010 WL 4537550, at *16 (S.D.N.Y. Nov. 8, 2010); *Veeco*, 2007 WL 4115809, at *7.  The absence of valid objections or investors electing to exclude themselves from the Settlement provides evidence of Class Members' approval of the terms of the Settlement and desire to share in the proceeds thereof.  *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).  Pursuant to the Preliminary Approval Order, Class Members were notified that they have until November 28, 2014 to request exclusion from the Settlement Class or to object to the Settlement.  Currently, nearly one month after notice was furnished to the Class, and just two weeks prior to the deadline to object or opt-out, no objections have been received and only two potential members of the Class has requested to be excluded from the Settlement Class.  *See* Press Decl. at ¶11.[4]  The overwhelmingly positive reaction of the Settlement Class evidences the Class' approval.  *See City of Providence*, 2014 WL 1883494, at *6 ("That almost no Class Member objected to the Settlement or chose to exclude himself from it is

---

[4] On October 14, 2014, Harold Rowell ("Rowell") sent a letter to the Settlement Administrator requesting exclusion from the Settlement Class and acknowledging that he would "release all manner of future claims [that he] may have had."  Fraga Decl. ¶13, Ex. D.  As Rowell failed to provide any detail relating to his ownership of Hi-Crush common units, whether he even is a member of the Settlement Class cannot be ascertained.  Likewise on November 10, 2014 Herbert M. Seybold requested exclusion from the Settlement Class but did not provide any evidence of his Class Period ownership of Hi-Crush common units.  *Id.*

indeed the strongest indication that the Settlement is fair and reasonable.").[5]

### 3.     Lead Plaintiffs Had Sufficient Information to Make Informed Decisions as To Settlement

In considering the third *Grinnell* factor, "the question is whether the parties had adequate information about their claims, such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Der., and ERISA Litig.*, 909 F.Supp.2d 259, 266 (S.D.N.Y. 2012) (citing *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (internal citations, quotation markets and alterations omitted)).   To satisfy this factor, parties need not have even engaged in formal or extensive discovery.   *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002) (McMahon, J.).[6]

Here, Lead Counsel conducted its own independent investigation without the benefit of any government investigation to formulate its theory of the case and develop sufficient detail to defeat Defendants' motions to dismiss.   As detailed in the Press Declaration, the investigation included, *inter alia*, reviewing and analyzing publicly available information and data concerning Hi-Crush and the proppant industry, and consulting with experts about accounting and causation issues.   Press Decl. ¶¶57, 59.

After defeating Defendants' motion to dismiss, Lead Counsel embarked on simultaneous class and merits discovery.   Review of thousands of pages of documents produced by Defendants allowed Lead Counsel to corroborate Lead Plaintiffs' factual allegations arising in connection with the seven week Class Period.   *See* Press Decl. ¶27.   The strength of the evidentiary support factored

---

[5] To the extent any additional timely exclusion requests are received subsequent to the filing of this brief, Lead Plaintiffs will address those requests in their reply papers, which are due on December 12, 2014.

[6] Formal discovery may not commence in cases brought under the PSLRA, such as this Action, until the motion to dismiss is denied.

heavily in settlement negotiations with Defendants and their insurers, and allowed Lead Counsel to argue plausibly that victory at summary judgment or trial were likely outcomes.  Thus, even though discovery had not yet concluded, Lead Plaintiffs and Lead Counsel "had more than enough information to make an informed and intelligent decision" to settle the claims at the current stage of the litigation.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013).

Lead Plaintiffs also filed their motion for class certification, arguing that the Action was particularly well-suited for class action treatment and that all requirements of Federal Rule Civil Procedure Rule 23 were satisfied.  ECF No. 81.  Accompanying Lead Plaintiffs' class certification motion was an expert declaration that demonstrated that the market for Hi-Crush common units was efficient during the Class Period.  During Class Discovery, Defendants deposed Lead Plaintiffs' representative in addition to Lead Plaintiffs' damages expert.  *See* Press Decl. ¶59.

"Accordingly, Lead Plaintiff and Lead Counsel have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial."  *City of Providence*, 2014 WL 1883494, at *7; *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,* No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (quotation omitted).

### 4.    Lead Plaintiffs Faced Significant Risks in Establishing Liability and Damages

In analyzing the risk to plaintiffs in establishing liability, the Court does not "need to decide the merits of the case or resolve unsettled legal questions."  *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (internal quotations and alterations omitted).  Rather, the Court is only required to weigh the likelihood of success on the merits against the relief provided by the Settlement.  *See id.*  Courts routinely approve settlements where plaintiffs would

have faced significant legal and factual obstacles to establishing liability.  *See Global Crossing*, 225 F.R.D. at 459.

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 463; *Vecco*, 2007 WL 4115809, at *8-9.  Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.  *See AOL Time Warner,* 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in a securities action presented significant hurdles to proving liability).

As set forth in detail in the Press Declaration (¶¶38-46), Lead Plaintiffs faced numerous hurdles in establishing liability.  In particular, Lead Plaintiffs would bear the burden of showing that the evidence they elicited during discovery was sufficient to establish their claims despite any credible defenses.  Although Lead Plaintiffs believe that documentary and testimonial evidence would support their claims, there is no way to determine without substantial additional litigation whether such evidence would withstand a summary judgment motion, and would convince a jury to accept Lead Plaintiffs' theory over Defendants' competing narrative.  Among other factual defenses, Defendants have argued that Hi-Crush's senior management:  (i) believed that Baker Hughes' repudiation of the Supply Agreement was invalid under the contractual provisions and therefore did not have to be disclosed to investors; (ii) that Hi-Crush's senior management relied upon advice of counsel in connection with evaluating their duty to disclose, and that (iii) even if Hi-Crush was legally obligated to disclose the repudiation, Defendants' failure to do so was the result of a good faith error, rather than an intent to defraud investors.

Lead Plaintiffs also face the risk that they will be unable to prove loss causation and damages.  *See In re Milken and Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *see also PaineWebber*, 171 F.R.D. at 129.  To prevail on those issues, Plaintiffs would be required to prove, with the assistance of an expert, that Defendants' misleading statements inflated the price of Hi-Crush common units, as well as the amount of the artificial inflation.

Defendants have already challenged the scientific validity of Lead Plaintiffs' expert's report in connection with class certification briefing, filed a *Daubert* motion, and likely planned to submit their own expert reports as the litigation proceeded.  *See, e.g., In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010).  At the summary judgment stage, Defendants would likely continue to challenge Lead Plaintiffs' calculation of damages or argue that any decline in the price of Hi-Crush common units resulted from factors other than disclosure of Baker Hughes' purported repudiation of the Supply Agreement.  Even if the Action were permitted to go to trial, it is not possible to determine which parties' expert the jury would find more credible.

Accordingly, absent this Settlement, the proposed class faces a very real risk of no recovery, possibly after years of additional proceedings absent settlement.  Conversely, the Settlement will provide tangible, certain and substantial relief to the proposed class now, "without subjecting them to the risks, complexity, duration, and expense of continuing litigation."  *Global Crossing*, 225 F.R.D. at 456-57.  Under these circumstances, the proposed settlement balances the risks, costs, and delay inherent in complex cases.

### 5.   Risks of Maintaining Class Action Status Through Trial

Lead Plaintiffs had fully briefed a class certification motion at the time the Settlement was finalized, and Lead Counsel is confident that the Court would have granted the Lead Plaintiffs'

class certification motion and disregarded Defendants' challenges thereto. However, Lead Counsel recognizes that Defendants can continuously raise challenges to class certification, and may move to de-certify the Class before trial or on appeal at the conclusion of trial, as class certification may always be reviewed. *See* Fed. R. Civ. P. 23(c); *Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time."). "Given such risk, this factor weighs in favor of approval of the Settlement." *In re Advanced Battery Techs.*, 298 F.R.D. at 178.

### 6.    Ability to Withstand Greater Judgment

The court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement. *See Grinnell*, 495 F.2d at 463. Lead Counsel does not dispute the viability of Hi-Crush and has no reason to believe that Defendants could not withstand a greater judgment. Courts, however, generally do not find the ability to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement. *See In re Sony*, 2008 WL 1956267, at *8 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate.").

### 7.    The Settlement Amount Is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The size of the Settlement provides support for its reasonableness when viewed in light of the best possible recovery and all of the risks of litigation. *See Wal-Mart*, 396 F.3d at 119 ("There is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . .") (internal citation omitted).

When compared to other securities class action settlements, the Settlement is clearly within the range of reasonableness. According to a 2014 report by NERA Economic Consulting entitled

"Recent Trends in Securities Class Action Litigation:  2013 Full-Year Review" ("NERA Report"), "the median settlement for cases with investor losses of less than $20 million has been 17.1% of the investor losses."  *See* Press Decl. ¶48, Ex. 4 at 32.  Accordingly, the $3.8 million settlement here, which represents over 36% of the estimated class-wide damages of $10.4 million, represents a truly remarkable result.[7]  Accordingly, the Settlement represents a recovery well in excess of the median securities class action settlement for comparable cases.  *See* Press Decl. ¶48.

The Settlement is therefore favorable in comparison to other securities class action settlements and represents a significant recovery in light of the risks that Lead Plaintiffs would not succeed on class certification and that even if they prevailed at summary judgment or trial that they would recover only a fraction of the maximum recoverable damages, or none at all.  As this Court noted, "There is a high likelihood that the costs involved in shepherding a securities action like this one through the discovery process, pre-trial motions, trial, and appeals will far outweigh – and indeed subsume – any recovery that might be realized by the Settlement Class."  *In re Advanced Battery Techs.*, 298 F.R.D. at 179.

Accordingly, Lead Counsel submits that this Court should find that the *Grinnell* factors, taken together, weigh in favor of Settlement and that the Settlement should be approved.

### D.    The Plan of Allocation Should Be Approved as It Is Fair, Reasonable, and Adequate

When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel.  "When formulated by competent and experienced class counsel," a plan for allocation of net settlement proceeds "need have only a reasonable, rational basis."  *Telik*, 576 F.

---

[7] As this is not a claims-made settlement, in the event that fewer than 100% of the class members choose to submit claims to share in the settlement recovery (securities class action claims rates are generally below 100%), those class members who file timely conforming claims will receive more than 36% of their potential recovery damages; perhaps significantly more.

Supp. 2d at 580 (quoting *Global Crossing*, 225 F.R.D. at 462 (quotation marks omitted)).   "A reasonable plan may consider the relative strength and values of different categories of claims." *Id.*; *see also In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 595-96 (S.D.N.Y. 1992) (plan of allocation that distributes greater part of settlement proceeds to those most injured is reasonable).   Because they tend to mirror the complaint's allegations, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, Master File No. 04 Civ.525, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007).

Here, the proposed Plan of Allocation is rational and consistent with Plaintiffs' theory of the case; the plan reimburses claimants largely based on when they bought or sold Hi-Crush common units, taking into account the amount of artificial inflation present in the stock price at those times (and the amount by which the level of inflation was reduced by the alleged corrective disclosure).   *See* Declaration of Jose C. Fraga, dated November 13, 2014 ("Fraga Decl."), Ex. A at 5-6.   More specifically, the Plan allocates Recognized Loss based on the Hi-Crush price decline immediately following the November 13, 2012 disclosure.   This Recognized Loss is applied to units that were purchased between the time of Defendants' allegedly misleading September 25, 2012 presentation and the November 13, 2012 disclosure, and were not sold prior to that disclosure.

Lead Plaintiffs and Lead Counsel submit that the Plan of Allocation represents a fair and equitable method for allocating the Net Settlement Amount among the members of the Class, and should be given final approval by the Court.   It should be noted that, to date, not one objection to the Plan of Allocation has been filed, which also supports its approval by the Court.   *See Veeco*, 2007 WL 4115809, at *14; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y.

2002).

###### E.     Notice to the Class Satisfies Due Process Requirements

The Notice program provides the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (citing Fed. R. Civ. P. 23(c)(2)).   In accordance with the Preliminary Approval Order, the Settlement Administrator, Garden City Group ("GCG"), caused the Court-approved Notice and Proof of Claim forms to be mailed by first class mail, postage prepaid to 2,360 potential Class Members.   Press Decl. Ex. 3 (Fraga Decl. at ¶3).   As of November 13, 2014, GCG has disseminated a total of 7,546 Notice Packets to potential Settlement Class Members.   Press Decl. ¶7, Ex. 3 (Fraga Decl. at ¶9).   On October 14, 2014, the Court-approved Summary Notice was published in *Investor's Business Daily*, and issued electronically over *Business Wire*.   Press Decl. ¶8, Ex. 3 (Fraga Decl. at ¶10).   The Notice and Proof of Claim along with other important documents related to the Settlement were also posted on the Claims Administrator's website (http://www.hicrushsecuritiessettlement.com) (the "Website") for easy downloading by interested investors.   Press Decl. ¶9, Ex. 3 (Fraga Decl. at ¶12). Additionally the Website allows claimants to submit electronic claims.   *Id*.   GCG also established a toll-free telephone hotline with a recorded message and live operators to assist potential Settlement Class Members with questions about the Settlement.   *See* Press Decl. Ex. 3 (Fraga Decl. at ¶11).   GCG has received 53 calls.   *Id*.   All calls to the toll-free telephone hotline have been responded to in a timely manner.   *Id*.

Moreover, as is required in class actions, the Class has been given notice of the proposed Settlement and Plan of Allocation, as well as the rights of Class Members and the method and dates by which they can object to, or opt-out of, the Settlement.   *See* Press Decl. at ¶¶10-11. Further, the Class has been advised of the date of the final fairness hearing at which time they will

have an opportunity to be heard with respect to any objection raised.  *See* Press Decl. ¶8.

## VI.    CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate; approve the Plan of Allocation as fair, reasonable, and adequate; and enter the accompanying proposed Order and Final Judgment.


Dated: November 14, 2014

KIRBY McINERNEY LLP

 /s/ Ira M. Press
Ira M. Press
Mark A. Strauss
Thomas W. Elrod
Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Tel:  (212) 371-6600
Fax:  (212) 751-2540

*Lead Counsel for Lead Plaintiffs*